IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| KENNETH K. DIXON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

The plaintiff, Kenneth K. Dixon ("Plaintiff"), through his undersigned counsel, files this Complaint against Defendant United States of America ("Defendant"), showing the Court as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a citizen of the state of Georgia and lives in Grovetown.

2. Defendant operates the Charlie Norwood Veterans Affairs ("VA") hospital in Augusta, Georgia, and other VA facilities around the United States.

3. Plaintiff brings this action under the Federal Tort Claims Act, having previously submitted a claim to the Department of Veterans Affairs which was denied within six months of the institution of this lawsuit.

### GENERAL ALLEGATIONS

4. Plaintiff incorporates by reference the allegations in Paragraphs 1-3.

5. Plaintiff is, at the time of the institution of this lawsuit, a 46-year-old disabled veteran.

6. Plaintiff served honorably in the United States Army, achieving the rank of E-5.

1

7. On November 5, 2003, while in the Iraqi war zone, Plaintiff's vehicle crashed and injured Plaintiff's spinal cord, resulting in a T4-T6 fusion which rendered him permanently paraplegic.

8. As a result of the crash, Plaintiff honorably retired from active duty service.

9. Following the crash and a long period of rehabilitation and adjustment, Plaintiff settled in the Augusta area and began receiving medical treatment at the Charlie Norwood VA, which boasts one of the largest spinal cord units in the VA system.

10. For years, Plaintiff has been susceptible to pressure sores developing in his hip and heel areas, which are parts of his body that do not have any sensation as a result of his injury.

11. Plaintiff has received extensive medical treatment at the VA for these pressure sores.

12. Among Plaintiff's treatments to his left hip area was a surgery performed at the Charlie Norwood VA in September 2010.

13. Unbeknownst to Plaintiff, at the conclusion of that surgery, medical personnel at the Charlie Norwood VA left a foreign object in Plaintiff's surgical site at or near his left hip (described in medical records as the left trochanteric area), to wit: a gauze sponge was left inside Plaintiff's body at the conclusion of that surgery.

14. Following that 2010 surgery, Plaintiff had continuous problems with his left trochanteric area: specifically, at virtually every subsequent trip to the VA from September 2010 through the end of 2012, his left trochanteric area (alternately described in medical records as either the left hip area or the left thigh area near the hip) was noted to be at least partially open, oozing liquid, and not properly healing.

15. Plaintiff had no way of knowing that the perpetually problematic left trochanteric area could not heal because a foreign object had been left inside his body.

16. Plaintiff's subsequent treatment by the VA after his 2010 surgery included a 6-week hospital stay at the VA in 2011, during which time Plaintiff's right hip and heels were repaired due to pressure sores (decubitus ulcers).  At that hospital stay in 2011, his left hip was examined and noted to be oozing liquid from what was assumed to be an infection, but the foreign object inside Plaintiff was not discovered and he was instead discharged from the VA.

17. As a result of the foreign object that was sewn into his left hip area, Plaintiff's medical condition continued to deteriorate throughout 2011 and 2012.

18. During that time period, Plaintiff was seen multiple times by VA personnel, none of whom ever discovered the VA's gauze in Plaintiff's left hip.

19. On December 31, 2012, Plaintiff underwent a surgery at a private hospital on his left trochanteric area to address the fact that the old surgical site had not healed and was oozing liquid since 2010.

20. By the time of the December 31, 2012 surgery, Plaintiff's health and well-being had deteriorated to the point that he had been suffering with a fever for months, had been on antibiotics for even longer, and had lost over 25% of his body weight.

21. Plaintiff insisted on having this surgery performed at a private hospital, having lost hope that the VA would heal his left hip area.

22. The surgeon at the private hospital found a "purulent segment of old gauze sponge" inside the old surgical site near Plaintiff's left hip.

23.     Until that December 31, 2012 surgery at the private hospital, the VA had performed all procedures on Plaintiff's hip.  No other medical provider or facilities had the ability or access to leave the foreign object in Plaintiff's body.

24.     Because of his weakened condition after the December 31, 2012 surgery and the necessity for further surgery in 2013 at the private hospital, Plaintiff did not immediately comprehend that the VA had left a foreign object inside his body.

25.     Plaintiff discovered that the VA had injured him when he got a billing statement for the December 31, 2012 surgery at the private hospital from TRICARE, the health benefits program for military retirees, which indicated that the surgery was necessitated by previous medical mistreatment. This statement from TRICARE prompted Plaintiff to investigate and ultimately to submit a claim to the VA.

## CAUSE OF ACTION

### NEGLIGENCE AND NEGLIGENCE PER SE

26.     Plaintiff incorporates by reference the allegations in Paragraphs 1-25.

27.     The VA owed Plaintiff a duty to exercise ordinary care in the performance of its duties.

28.     The VA breached that duty to Plaintiff in a number of specific respects, including: leaving the gauze sponge inside Plaintiff during the September 2010 surgery, failing to properly treat that surgical site which would not heal after the surgery, and failing to discover and diagnose the foreign object as the cause of Plaintiff's medical condition.

29.     Defendant's negligence is the sole, direct, and proximate cause of Plaintiff's significant personal injuries.

## **DAMAGES**

30. Plaintiff incorporates by reference the allegations in Paragraphs 1-29.

31. Plaintiff has incurred medical expenses, emotional turmoil, pain, physical infirmities and injuries, and extreme suffering, many of which are permanent in nature.

32. Plaintiff's medical providers have indicated to him that his left leg will likely have to be amputated at the hip area, a complication that, if it occurs, will have devastating effects on Plaintiff's physical and emotional well-being.

WHEREFORE, Plaintiff prays as follows:

a) That summons and process issue and be served upon Defendant according to law;

b) That judgment be granted in Plaintiff's favor against Defendant for damages in the amount to be determined;

c) That Plaintiff be awarded attorney's fees and expenses incurred by the filing of this lawsuit; and

d) Such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 28th day of October, 2014.

*/s/ Ken Crowder*
Kenneth D. Crowder
Ga. Bar No. 123985

*/s/ David M. Stewart*
David M. Stewart
Ga. Bar No. 142029

CROWDER STEWART LLP
P.O. Box 160
Augusta, GA  30903
(706) 434-8799
ken@crowderstewart.com
david@crowderstewart.com


*/s/ Joe Rhodes*
Joseph T. Rhodes
Ga. Bar No. 309847

1450 Greene St., Ste. 105
Augusta, GA 30901
(706) 457-6612
joe.rhodeslaw@gmail.com

ATTORNEYS FOR PLAINTIFF