IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| KENNETH K. DIXON, | * | |
| Plaintiff, | * | |
| v. | * | CV 114-205 |
| UNITED STATES OF AMERICA, | * | |
| Defendant. | * | |

**O R D E R**

During his military service in Iraq, Kenneth R. Dixon ("Plaintiff") was rendered a paraplegic, a condition that has required him to seek extensive care with the Charlie Norwood Veterans Affairs Medical Center ("VAMC") in Augusta, Georgia. After seeking outside medical assistance for an infection in his left hip, Plaintiff became aware that an old gauze sponge was left in his body, which he alleges occurred during a surgery performed at the VAMC. Plaintiff filed an administrative claim, as is required by the Federal Tort Claims Act ("FTCA"), which was ultimately denied. Following the denial, he filed suit in this Court for negligence and negligence per se. Now before the Court is the Government's Motion to Dismiss, wherein it avers that this Court lacks subject matter jurisdiction because Plaintiff failed to administratively exhaust his claim under the FTCA. (Doc. 6.) More specifically, the Government contends that Plaintiff referred

to a 2011 or 2012 surgery as the source of his injury, while his Complaint in this Court refers to a 2010 operation. For the reasons stated herein, the Government's motion is **DENIED**. The Court additionally finds that a hearing in this matter is unnecessary and therefore Plaintiff's motion for a hearing (doc. 11) is **DENIED**.

I. BACKGROUND

A. Plaintiff's Medical Treatment[1]

Plaintiff, a forty-six-year-old disabled veteran, received treatment at the VAMC in Augusta, Georgia following a severe spinal injury sustained while deployed in Iraq. (Compl., Doc. 1, ¶¶ 5-9.) Plaintiff alleges that following his spinal injury, he became susceptible to pressure sores in his hip and heels, which required "extensive medical treatment at the VA[.]" (Id. ¶¶ 10-11.) To treat these sores, Plaintiff appears to have undergone a number of surgeries between 2010 and 2012.[2] (Id. ¶ 12; Doc. 6, Ex. A.) Specifically, Plaintiff alleges that following a 2010 surgery, he "had continuous problems with his left" hip, which was "at least partially open, oozing liquid, and not properly

---

[1] As will be discussed below, no presumptive truthfulness attaches to Plaintiff's allegations in this factual attack on jurisdiction. The Court relies on Plaintiff's allegations in his Complaint for contextual purposes only. Nothing in this Court's Order should be construed as accepting, or rejecting, the truth of these allegations.

[2] Plaintiff's complaint refers to a 2010 surgery and a 2011 hospital stay. (Compl. ¶¶ 12, 16.) Additionally, as discussed in greater detail below, Plaintiff's SF-95 form and attached letter from counsel referred to surgeries in 2011 and 2012. (Doc. 6, Ex. A.)

2

healing." (Compl. ¶ 14.) In 2011, Plaintiff spent six weeks at the VAMC for treatment for his right hip and heels. (Id. ¶ 16.) At that time, "his left hip was examined and noted to be oozing liquid from what was assumed to be an infection[.]" (Id.)

On December 31, 2012, Plaintiff underwent surgery at a private hospital to address the issues with his left hip. (Id. ¶ 19.) Prior to this surgery, Plaintiff had suffered fevers for months and lost over twenty-five percent of his body weight. (Id. ¶ 20.) During the operation, the surgeon discovered a gauze sponge inside the old surgical site in the left hip. (Id. ¶ 22; Doc. 6, Ex. B.) Until this December 2012 surgery, Plaintiff alleges that the VAMC performed all procedures on his hip, leaving no other medical providers in control of that area. (Compl. ¶ 23.) Plaintiff additionally contends that his "medical providers have indicated to him that his left leg will likely have to be amputated at the hip area[.]" (Id. ¶ 32.)

B. **Procedural History**

On February 5, 2014, Plaintiff filed a Standard Form 95 ("SF-95") with the Department of Veterans Affairs alleging negligence and medical malpractice. (Doc. 6, Ex. A.) In his claim, he listed his damages as $10 million. On the SF-95 form, Plaintiff alleges the following:

> Claimant is a veteran that was being treated at the Charlie Norwood VA in Augusta, GA for injuries he sustained while on duty in Iraq. A surgery was performed on his left hip. During this surgery in

3

> August of 2011 gauze was left in his body. The gauze was discovered on a second surgery in Dec 31, 2013 [sic]. He was not made aware of the incident until February 13, 3013 [sic]. This is a case of per se negligence and medical malpractice.

(Id.) Thus, the SF-95 form refers specifically to an August 2011 surgery as the source of his injury. Attached to the SF-95 form was a letter from Joseph T. Rhodes, Esq., Plaintiff's counsel. (Id.) In that letter, Mr. Rhodes stated that during one of Plaintiff's surgeries, "believed to be in 2011 or 2012, the doctors, nurses and all other staff that participated in said surgery negligently left a gauze sponge inside Mr. Dixon's left hip." (Id.)

On August 15, 2014, the VA denied Plaintiff's administrative claim. (Doc. 6, Ex. C.) Plaintiff then initiated suit in this Court on October 28, 2014 under the FTCA. Plaintiff makes claims of negligence and negligence per se based on three allegations: (1) leaving the gauze sponge inside him; (2) failing to properly treat his surgical site; and (3) failing to discover and diagnose the foreign object as the cause of his condition. (Compl. ¶ 28.) Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Government has moved to dismiss Plaintiff's complaint, arguing that he did not exhaust his administrative remedies because he did not properly present notice to the VA prior to bringing suit.

4

## II. **LEGAL STANDARD**

There are two types of challenges to a district court's subject matter jurisdiction under Rule 12(b)(1): facial attacks and factual attacks. A facial attack on a complaint "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation and internal quotation omitted, alteration in original). On the other hand, a factual attack "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Id. (internal quotation marks and citation omitted).

Here, the Government makes a factual attack, contending that Plaintiff's FTCA claims are barred for failure to exhaust administrative remedies. "On a factual attack of subject matter jurisdiction, a court's power to make findings of facts and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of plaintiff's cause of action." Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A., 104 F.3d 1256, 1261 (11th Cir. 1997). When the facts related to jurisdiction do not implicate the merits of the plaintiff's legal claim, then "the trial court is free to weigh the evidence and

5

satisfy itself as to the existence of its power to hear the case." Id. (internal quotation marks omitted). But when the facts related to jurisdiction do implicate the merits, then "[t]he proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case[.]" Id. (internal quotation marks omitted).

Here, the Court finds that the question whether Plaintiff exhausted his administrative remedies implicates only the adequacy of notice, not the merits of his tort claims. Thus, the Court will review and weigh the evidence presented to determine whether subject matter jurisdiction over the challenged claims has been established. Accordingly, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Lawrence, 919 F.2d at 1529 (quoting Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)).[3] Plaintiff bears the burden of establishing that jurisdiction exists in the face of the Government's factual challenge to subject matter jurisdiction. OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002).

---

[3] Decisions of the Court of Appeals for the Fifth Circuit that were announced prior to October 1, 1981, are binding precedent in the Eleventh Circuit. See Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

6

## III. DISCUSSION

The FTCA creates a limited waiver of the sovereign immunity of the United States to suits in tort. Dalrymple v. United States, 460 F.3d 1318, 1324 (11th Cir. 2006). The prerequisite for liability under the Act is a "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Unlike a suit against a private person, however, Congress has created an administrative procedure claimants must exhaust. This procedure allows the agency involved to receive a claim, investigate, and perhaps settle the dispute before a suit is filed. See 28 U.S.C. § 2675. Section 2675(a) provides that "[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency[.]" Failure to timely file an administrative claim with the appropriate agency results in dismissal of the plaintiff's claim because this filing is a jurisdictional prerequisite. Rise v. United States, 630 F.2d 1068, 1071 (5th Cir. 1980).

> Pursuant to § 2675, an administrative claim
>
> shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized

7

agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2(a). Courts of this Circuit have construed this mandate to mean that a plaintiff must provide written notice to the agency that includes (1) sufficient information to enable the agency to investigate the claim, and (2) a sum certain for the amount of damages sought. <u>Adams v. United States</u>, 615 F.2d 284, 289 (5th Cir. 1980). In addition, notice must be satisfied with respect to *each* legal claim. <u>Turner ex rel. Turner v. United States</u>, 514 F.3d 1194, 1200 (11th Cir. 2008). There is no dispute that Plaintiff properly stated a sum certain in his SF-95 form: he requested $10 million in damages. The question before the Court is whether his administrative filing sufficiently notified the Government of the nature of his legal claims.

A. Administrative Notice Standard

The notice requirement serves a number of purposes, benefiting claimants, agencies, and the courts. First, notice is intended "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." <u>Adams</u>, 615 F.2d at 288 (quoting S. Rep. No. 89-

8

1327 (1966), reprinted in 1966 U.S.C.C.A.N. 2515, 2516). In addition to this efficiency purpose, the notice requirement "provid[es] for more fair and equitable treatment of private individuals and claimants when they deal with the Government or are involved in litigation with their Government." Id.; see also Burchfield v. United States, 168 F.3d 1252, 1255 (11th Cir. 1999) ("Congress, therefore, enacted section 2675(a) not to place procedural hurdles before potential litigants, but to facilitate early disposition of claims.").

When a claimant sues the Government under the FTCA, a clear informational asymmetry exists between the parties. Notice can rectify this asymmetry. That is, notice provides the Government with an opportunity to conduct an independent investigation, assess its potential liability exposure, and approach the bargaining table as an informed party so that settlement negotiations may begin in earnest before an action is ever filed in court, if desired. But to achieve its *dual* purpose, notice must do more than merely inform the Government of a "potential lawsuit," Suarez v. United States, 22 F.3d 1064, 1066 (11th Cir. 1994), or simply refer to an attachment of medical records — agencies, like courts, cannot be forced to dig for material facts "like pigs, hunting for truffles." United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991); see Burchfield, 168 F.3d at 1257 ("Nor does our interpretation of the statute mean that an agency

9

will be on notice of all the facts contained in voluminous records presented by a claimant, if the claimant has not pointed to specific sources of injury."). Likewise, a claimant cannot be obligated to prove his claim or provide a detailed preview of his lawsuit at this preliminary stage. See Burchfield, 168 F.3d at 1255. After all, the Government will often have better access to many of the details surrounding the underlying incident. This is especially true where, as here, the claim centers on an alleged error conducted in the midst of a surgery. Moreover, it certainly would not be "fair and equitable" to private claimants if federal agencies were allowed "to shift the burden of investigation to private claimants while retaining only the responsibility of evaluating the information supplied by the claimant." Adams, 615 F.2d at 290 n.9.

Under this Circuit's generous reading of § 2675(a), a claimant need not state every material fact underlying every legal claim. See Burchfield, 168 F.3d at 1256 ("An agency cannot use an overly technical reading of the language of a claim as a reason to turn a blind eye to facts that become obvious when it investigates the alleged events."); see also Brown v. United States, 838 F.2d 1157, 1161 (11th Cir. 1988) ("Compelling a claimant to advance all possible causes of action and legal theories is 'overly technical' and may frustrate the purpose of the section 2675(a) notice requirement." (internal quotations and citation omitted)).

Instead, it suffices if the material facts pertinent to the claim are either expressly set out or so closely related to those stated that the agency may reasonably be expected to uncover them in the course of its investigation. See Burchfield, 168 F.3d at 1256-57; see also Rise, 630 F.2d at 1071 (finding that mere mention of a transfer between hospitals in claimant's administrative claim was sufficient to notify the Army of possible liability for negligent referral because an "investigation . . . should have produced . . . evidence that [other] facilities may have been inadequate"). "The test is an eminently pragmatic one: as long as the language of an administrative claim serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct . . . , it fulfills the notice-of-claim requirement." Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 40 (1st Cir. 2000); accord Rise, 630 F.2d at 1071 (holding that notice is adequate if it "brings to the Government's attention facts sufficient to enable it thoroughly to investigate its potential liability and to conduct settlement negotiations with the claimant"). In sum, an FTCA claimant is required only to provide such rudimentary details as to allow for a proper agency investigation, and the Government is deemed to be on notice of any legal claim reasonably suggested following that investigation. This flexible approach "is in keeping with the original purpose

11

behind the filing of an administrative claim." Santiago-Ramirez v. Sec'y of Dep't of Defense, 984 F.2d 16, 19 (1st Cir. 1993).

B. **Plaintiff's Claim**

The gravamen of Defendant's challenge is that it had no reason to review Plaintiff's earlier medical records because it was only notified of surgeries after 2011. Plaintiff acknowledges that he cannot identify specifically who or when the sponge was left in his body, but asserts that he cannot be expected to know those exact details as he was unconscious at the time of the injury. Moreover, the letter from Plaintiff's counsel attached to the SF-95 form clearly indicates some uncertainty as to the date of the injury, as it refers to a surgery "*believed to be* in 2011 or 2012." (Doc. 6, Ex. A (emphasis added).)

Bearing in mind that under the FTCA's minimal requirements Plaintiff need only "bring[] to the Government's attention facts sufficient to enable it thoroughly to investigate its potential liability," Rise, 630 F.2d at 1071, the Court finds that Plaintiff's notice was adequate. Defendant is correct that Plaintiff's notice makes no mention of a surgery in 2010, but exhaustive fact pleading is not the standard by which the notice is to be judged. Here, Plaintiff's SF-95 and accompanying letter clearly refer to the injury as a foreign object being left in Plaintiff's body during one of his previous surgeries. It is difficult for the Court to imagine that the Government could not

12

adequately investigate his claim, even with confusion regarding the date. If the Government chose to ignore any previous surgeries knowing that Plaintiff would not be conscious during the alleged injury, that fault does not lie with Plaintiff. See Burchfield, 168 F.3d at 1256 ("An agency cannot use an overly technical reading of the language of a claim as a reason to turn a blind eye to facts that become obvious when it investigates the alleged events.") This is especially so given that the accompanying letter simply referred to the surgery as one "believed to be" during a particular date range. The uncertainty of that language demonstrates that the exact date was unknown, and Defendant should have reviewed Plaintiff's relevant surgical records.

Plaintiff's notice clearly informed the VA that he had undergone a number of surgeries at the VAMC, that a gauze sponge was found in the surgical site, and that the gauze was the source of a severe infection. Even a basic investigation of Plaintiff's records would have set sight on the potential source of his alleged injury. The Court will not dismiss this case based on such an "overly technical" reading of the notice statute, particularly where it pertains to a plaintiff who could not — even with excessive diligence — say with any degree of certainty which surgery caused the injury. A contrary holding would clearly frustrate one of the dual purposes of the notice statute: to

13

"provid[e] for more fair and equitable treatment of private individuals and claimants when they deal with the Government or are involved in litigation with their Government." See Adams, 615 F.2d at 288 (quoting S. Rep. No. 89-1327 (1966), reprinted in 1966 U.S.C.C.A.N. 2515, 2516).

## IV. CONCLUSION

This simply is not the type of case intended to be dismissed for inadequate notice. Plaintiff did more than apprise the Government of a potential lawsuit and did not simply refer to voluminous medical records. Cf. Suarez, 22 F.3d at 1066 and Burchfield, 168 F.3d at 1257. Accordingly, the Court finds that Plaintiff's notice contained sufficient factual context to adequately alert the Government of the legal claims waged in this action. Therefore, this Court has subject matter jurisdiction over those claims. The Government's motion to dismiss, therefore, (doc. 6) is **DENIED**. Moreover, Court finds that a hearing in this matter is unnecessary and therefore Plaintiff's motion for a hearing (doc. 11) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 23rd day of February, 2015.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

14